# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# HELENA DIVISION

**Cause No. CV-11-26-BU-SEH**

Robert Van Orden,

**Plaintiff,**

vs.

Benefis Healthcare,

**Defendant.**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**TRANSCRIPT OF PROCEEDINGS**

**MOTION HEARING**

Missouri River Federal Courthouse
U.S. District Court Great Falls
125 Central Avenue West
Great Falls, MT 59404

**November 13, 2012**
**10:00 a.m.**

## The Honorable Sam E. Haddon, Presiding

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Julie L. Sampson*
*Court Reporter*
*For The Record Reporting Services*
*PO Box 176*
*Butte, Montana  59703*
*(406) 498-3941*

# APPEARANCE OF COUNSEL:

**For the Plaintiff:**

**On behalf of Robert Van Orden:**

Mr. Allen P. Lanning
Lanning, Harris & Conklin
300 Central Avenue
Suite 400
PO Box 2049
Great Falls, MT 59403-2049
(406) 727-9270 (Phone)
(406) 761-1406 (Fax)
Email: lhc@mt.net


**For the Defendant:**

**On behalf of Benefis Healthcare:**

Mr. David Matthew McLean
Browning, Kaleczyc, Berry & Hoven
201 W. Railroad Street
Suite 300
Missoula, MT 59802
(406) 728-1694 (Phone)
(406) 728-5475 (Fax)
Email: dave@bkbh.com


M. Christy S. McCann
Browning, Kaleczyc, Berry & Hoven
800 N. Last Chance Gulch
Suite 101
PO BOX 1697
Helena, MT 59624-1697
(406) 443-6820 (Phone)
(406) 443-6883 (Fax)
Email: christy@bkbh.com

| | |
|---|---|
| 1 | **PROCEEDINGS** |
| 2 | |
| 3 | **(The proceedings began at 9:58 a.m.)** |
| 4 | |
| 5 | THE BAILIFF:  All rise. |
| 6 | THE COURT:  Good morning, everyone.  Be seated, |
| 7 | please.  Madam clerk, if you'd call our matter for us, please. |
| 8 | CLERK OF COURT:  This Court will now conduct a |
| 9 | motion hearing in Cause No. CV-11-26-GF-SEH, Robert Van |
| 10 | Orden versus Benefis Healthcare. |
| 11 | THE COURT:  The Plaintiff is represented in this |
| 12 | matter by Mr. Lanning, the Defendant is represented by |
| 13 | Mr. McClain and others. |
| 14 | We have before the Court the Plaintiff's motion for |
| 15 | class certification.  The Defendant has, of course, filed briefs |
| 16 | in opposition.  And, Counsel, I very much appreciate your |
| 17 | accommodation on the adjustment of your schedules to have |
| 18 | the hearing at this time.  We were uncertain when we last |
| 19 | talked as to whether we could hold with the ten o'clock hour, |
| 20 | but as it turns out the criminal matter took care of itself |
| 21 | through the Defendant's change of plea and we are ready to |
| 22 | proceed. |
| 23 | Mr. Lanning, you have the floor. |
| 24 | MR. LANNING:  Thank you, Your Honor.  We |
| 25 | represent Robert Van Orden, Your Honor, and we have moved |

```
 1        for class certification in this case.  It is my intent, subject to
 2        specific questions from the Court, to keep my presentation
 3        relatively short today.  I believe that all of the various
 4        elements that I am required to prove were discussed in length
 5        in the party's briefs, and, therefore, I will just address a few
 6        brief issues and --
 7                   THE COURT:  Take as much time as you wish,
 8        Counsel.  We haven't placed any time limits on anyone here
 9        today.
10                   MR. LANNING:  I do understand that.  And thank
11        you, Your Honor.  It must be nice from your end to have your
12        week open up.
13                   THE COURT:  Well, someone else said the Lord
14        made lots of time, we'll take all we need.  Go ahead,
15        Counsel.
16                   MR. LANNING:  Thank you.  The situation in this
17        case, Your Honor, involves one which is particularly suited to
18        class action resolution.  Benefis has engaged in a policy and
19        practice -- it appears from their affidavit that it's an unwritten
20        policy and practice -- of arranging the way that it bills
21        TRICARE beneficiaries to maximize its recovery where there is
22        a third-party insurance policy available, and, in fairness to
23        Benefis, it appears that they have done so with the knowledge
24        and approval of the local TRICARE regional administrator.  As
25        the Court is aware, there are three regional TRICARE
```

1   administrators nationwide, each one enters into contracts with

2   healthcare providers in its area, and such a contract was

3   entered into here between the regional administrator and

4   Benefis.

5           Federal law generally provides that TRICARE,

6   which is a health program under which active duty military

7   and some others, including inactive duty military and family

8   members, are entitled -- well, are entitled to healthcare, and

9   it's paid by TRICARE on behalf of the Government.  TRICARE

10  has many, many complex regulations, but an important

11  element of TRICARE, and constant with its purpose of

12  providing medical care and protecting the service members

13  and others who are qualified, is that healthcare organizations

14  which provide services may not recover directly from the

15  TRICARE beneficiary, which would be the military member or

16  his family and so on.

17          What Benefis has done in its practice is this:

18  Where it identifies one of its patients as having TRICARE, it

19  then looks to other sources of insurance.  And we often see

20  those in cases of accidents, liability insurance, uninsured and

21  under-insured motorist coverages, as well as Med Pay

22  provisions.  Where Benefis identifies that those insurance

23  sources are available, it does not bill TRICARE, because under

24  TRICARE it would be forced almost certainly in every case to

25  take much less than the full amount of its bill.  TRICARE pays

1       discounted amounts, and those discounted amounts are all

2       that the healthcare provider is entitled to recover.

3               The regional contract and the TRICARE manual,

4       which is not a regulation and doesn't have the force of law,

5       suggests that it is acceptable for Benefis to go ahead and seek

6       these third-party payments from insurers in full as long as it

7       hasn't billed TRICARE yet.  And that's what Benefis has been

8       doing.  It is our contention that that is inappropriate, that

9       Federal law does not allow that.  That if a person is covered by

10      TRICARE, regardless of the circumstances of insurance, what

11      Benefis has to do is submit it to TRICARE and take the money

12      from TRICARE, and that's all.  And we believe that the Georgia

13      Supreme Court was right in the MCG case when it determined

14      that it is the Government who has the ability to obtain

15      reimbursement from third parties, but the amount of that

16      reimbursement is limited to the amount that TRICARE has

17      paid out to healthcare providers.

18              There are -- there is another way in which Benefis

19      has manifested its attempt in this difficult economy to

20      maximum its payments from TRICARE beneficiaries, and that

21      is it will on occasion bill TRICARE, and then it will learn after

22      billing TRICARE, and indeed sometimes after payment of

23      TRICARE, that there is a third-party insurance source

24      available.  What it will do then is bill the third party insurance

25      source for the full amount of its bill; and if it recovers it, then

1    it will go ahead and reimburse TRICARE for its discounted

2    payment.  Again, it is our position in this suit that that is

3    absolutely a violation of Federal law.

4              My client, Robert Van Orden, straddles both of

5    those situations.  He was injured in an automobile accident,

6    and he sought immediate treatment.  When he sought

7    immediate treatment, and this was in October of 2009, he

8    identified that he had been hit by someone else, and he

9    identified the tortfeasor's insurance company.   As a result,

10   that insurance company was billed and TRICARE was not.

11             Some months later, about eight, nine months later

12   he returned to Benefis for additional treatment.  At that time

13   he was asked, Has your insurance remained the same?  And

14   he said, Yes.  And based on that, the hospital billed TRICARE

15   and was paid by TRICARE.  And, ultimately, then, they put two

16   and two together, realized that there was a third-party claim

17   here, and they filed a lien for this new treatment against

18   Unitrin, that third-party insurer, and then were prepared to

19   pay TRICARE back if they recovered that money.  Ultimately,

20   due to our involvement, they withdrew their lien.

21             Our request for class certification is based on the

22   fact that our client is not the only one to whom this has

23   happened, that this represents a policy and procedure that

24   Benefis applies in these cases.  And, in fact, Your Honor, if

25   you've reviewed their brief, you see that they make no bones

1    about that, that is the case.  They will say that they believe

2    they are acting under a correct interpretation of Federal law

3    and under permission from the regional administrator.

4            But if you turn to their brief on Pages 7, 8 and 9,

5    essentially they admit that that -- what I just described are

6    the procedures that they follow.  And that's an important

7    admission, because how this case is going to be decided, both

8    as an individual case and if certified as a class action, requires

9    the simple resolution of that legal question.  In other words,

10   are they permitted under Federal law to bill third-party payers

11   first and not bill TRICARE?  Are they permitted to pay

12   TRICARE back if they find others?

13           In other words, the simple question is may they

14   effectively maneuver themselves out of receiving a lower

15   TRICARE payment where they have identified a third-party

16   payer?  We believe the answer is no.  They believe the answer

17   is yes.  The reason that's significant is because that is a legal

18   question.  We are not going to have substantial factual

19   questions on the liability issue, and its capable of an easy

20   resolution based simply upon briefing.

21           The other reason that it's important, and that

22   specifically relates to the certification issue, Your Honor, is

23   that they have described a policy.  It's unwritten, but

24   nevertheless it is a systematic, programmatic method that this

25   hospital has devised for dealing with TRICARE beneficiaries

1    when there is other third-party insurance available.  They

2    follow the same rule with respect to everyone.  The only

3    difference is whether they find out about the other insurance

4    before they bill TRICARE, or after.

5            As I said at the beginning, I'm not going to go

6    through, unless the Court desires it, every single of the

7    various elements required to prove that we are entitled to

8    certification under Rule 23, I think we address each of them in

9    our brief.  I just want to touch upon a few particularly

10   contested areas.  One of those, Your Honor, is commonality.

11   The issue is whether their claims or defense is common to

12   each class.  As the Court is aware, the seminal United States

13   Supreme Court case addressing this issue is the Walmart case.

14           In the Walmart case, it was alleged that Walmart

15   had systematically discriminated against female employees

16   across the board.  In that case, however, ultimately the United

17   States Supreme Court refused to grant certification, and one

18   of the sticking points was commonality.  In that case, the

19   Supreme Court noted that there was no specific  identifiable

20   policy or program which led to discrimination against women

21   in the Walmart corporation.

22           Further, the Court noted that not only was there

23   not a policy, but the policies that existed gave substantial

24   discretion in hiring and advancement decisions to local and

25   regional managers.  So the court said that regardless of

1    whether the plaintiffs could demonstrate that company wide

2    women failed to advance, it was not a suitable action for a

3    class action on the grounds that there was not a common

4    basis of law, or question, you know, because of the variations,

5    because there was no company-wide policy.  Basically every

6    claim was a separate and discreet claim.

7           That's not the case here, however.  As indicated by

8    Benefis' own brief, what they are doing is uniform, systematic,

9    and has the effect of policy, even if it's not specifically written.

10   They treat all of these cases the same.  They do the same

11   thing with respect to every TRICARE beneficiary who comes in,

12   and that's determine whether or not there are other sources of

13   insurance; and if there are, pursue them first or to the

14   exclusion of TRICARE so that they can maximize their

15   recovery.  There would be no problem with that, except, as we

16   believe, it violates Federal law and -- both statutory and

17   regulatory.

18           But the difference between Walmart and this case,

19   what makes this case more like the Diaz case, more like the

20   Montana cases I've cited, are simply that, that what we have

21   in this case is a programmatic policy.  And whether or not that

22   was -- is a correct policy, or that policy violates Federal law, is

23   a sufficient question to satisfy commonality.  It is just that

24   simple.  Ordinarily I would not necessarily cite a whole lot of

25   Montana Supreme Court decisions to this Court, but they are

1    consistent, and, in fact, the Montana Supreme Court works

2    hard to apply Federal law, even when it does its own analysis

3    under class actions.

4                And here -- and I apologize, I'm not sure if the

5    Court has a copy of it.  I certainly have not provided one.  But

6    I would refer to the recent case of Chipman versus Northwest

7    Healthcare Corporation, 2012 WL 5328634.  This is a Montana

8    Supreme Court case which was decided on October 30th,

9    2012.  And I think it's worth mentioning, because it applies

10   Walmart in a case which -- while not necessarily similar to this

11   one, has similar analytical framework.

12               Chipman involves a case where hospital

13   employees brought suit against a hospital seeking a

14   declaration that the sick leave buy-back program was part of

15   their employment contract to which they were entitled after

16   the hospital and its related entities stopped, just unilaterally

17   said we are stopping that buy-back program.  And there was a

18   request for class certification.  And commonality was one of

19   the big issues there, and the Montana Supreme Court applied

20   a strictly Federal analysis, looking closely at the Walmart case

21   and said this:  "Class member's claim must depend upon a

22   common contention that is capable of class wide resolution,"

23   which means, quoting Walmart, that "Determination of its

24   truth or falsity will resolve an issue that is central to the

25   validity of each one of the claims in one stroke."

1            Your Honor, that's exactly the situation here.  The

2    question of whether it's permissible to seek a third-party

3    recovery from TRICARE beneficiaries in excess of the TRICARE

4    approved amount is central to every single claim of this

5    potential class and will essentially resolve those claims on the

6    liability issues.  The Walmart court said the capacity of a class

7    wide proceeding to generate common answers apt to drive the

8    resolution of the litigation is really what we are looking at.

9    Not the rating of common questions, but whether or not the

10   answers to those question will resolve the case as to all class

11   members.

12           And, again, the resolution of the identified legal

13   issue, based on the facts which are undisputed, will resolve it.

14   That is why this case, Your Honor, is particularly appropriate

15   for class certification.  In the Chipman case the Montana

16   Supreme Court went on to note that what was at issue was a

17   uniform employment practice and a standardized group

18   contract.  So, again, like the present case where there is a

19   policy, a contract or a practice which affects everyone equally,

20   as opposed to amorphous and disparate discretion among

21   various company employees like the court addressed in

22   Walmart, then commonality is met.

23           In fact, where our Supreme Court said, "Unlike

24   Walmart where individuals in a class were treated differently

25   and local personnel had wide discretion, employers operated

1    under a company-wide policy that applied equally to all

2    members of this class."  Again, that's the Montana Supreme

3    Court in Chipman.  Again, it's not binding on this Court, but

4    it's notable and persuasive in this case where we have some

5    Montana questions of law, where the Montana Supreme Court

6    follows a Federal analysis, and where there are issues where

7    Montana law and Federal law are both implicated in this case,

8    such as the made whole doctrine.

9              Another area that I think is worthy of some brief

10   remarks today, and that is as to the adequacy of our client as

11   a class representative.  They have raised one argument that

12   he's not adequate, and that's essentially based on the

13   argument that he committed fraud by not identifying, when he

14   went back in May, that there was a third-party insurer in this

15   case.  The problem with -- well, there is a couple of problems

16   with that, and they are set forth in the brief, but the most

17   important problem is that is not factually supported.

18             The only specific sworn testimony in front of this

19   Court is the affidavit of my client in which he indicates that, A,

20   he didn't provide the information; and, B, what happened

21   when he went back in May was simply they were asked do you

22   have the same insurance, and he said yes.  There has been no

23   countervailing affidavit filed from the person who did the

24   intake.  Most likely that person has long since forgotten it.

25   There is no real basis other than speculation to find that he

1    did anything or his wife did anything other than what was

2    testified to in their earlier affidavits.

3            Based on that, this unclean hands defense isn't

4    really a defense.  It's really not worthy of consideration.  But

5    as I pointed out, Your Honor, in the brief, even if it had any

6    legs whatsoever, it still wouldn't as a legal matter.  Because if

7    what Benefis was doing was wrong, it was wrong.  If their

8    interpretation of the Federal statutes is wrong, that doesn't

9    make him have unclean hands, it just returns the situation to

10   where it should have been in the first place.  Or at least it

11   would have but for the fact that they then went and filed liens

12   and tried to recover the full amount of the May treatment from

13   the tortfeasor's insurer anyway.

14           The final issue, Your Honor, that I want to talk

15   about briefly is the interaction of this class with the Conway

16   class.  As this Court knows, there is another case pending in

17   State court, I believe it's still on appeal waiting decision for

18   the Montana Supreme Court case.  That case was briefly in

19   front of this case and was remanded to State court, and it's

20   undisputed that the class which we are seeking here would

21   constitute a sub class in that action.

22           In that action, the plaintiff, Conway, has requested

23   and received at the State District Court level a class

24   certification that is very broad and addresses the same issue

25   that we are addressing except that it includes every single

1    case where any kind of insurer has a contract under which --

2    under which contract Benefis agrees to accept less than its full

3    amount, but then seeks its full amount from other sources.

4              As I pointed out, though, that's --

5              THE COURT:  Well, does that, Counsel, if it carries

6    through to completion and favorably to the class position,

7    preempt your case?

8              MR. LANNING:  No, it does not, Your Honor.  And

9    there I would refer the Court to the Ninth Circuit cases that

10   are discussed in our brief in which the Ninth Circuit addresses

11   under what circumstances can there be overlap in classes?

12   Because we've definitely got an overlap in class to the extent

13   that our class is an entire subset.  However, one of those

14   circumstances involves the difference of the remedies of the

15   causes of action of the violations claim.  And that -- that's the

16   Negrete case and its related cases, and that is the primary

17   case and rationale upon which we base our beliefs that the

18   classes -- that class actions can be done separately.

19             Conway and his counsel have pursued strictly

20   state law remedies based primarily on breach of contract

21   between the healthcare provider and the insurance provider,

22   or TRICARE, whereas we are -- we have a broader and

23   different scope.  In our case we are arguing violations or the

24   application of Federal law that is specific to TRICARE, specific

25   statutory and regulatory provisions.  We also are seeking

1    injunctive relief, whereas they are seeking monetary relief.

2    Depending on the scope of the class and the scope of the

3    relief, you know, the injunctive relief we seek could result in

4    the hospital having to go back and make some adjustments.

5    Or it could limit the hospital as to outstanding claims and

6    claims going forward.  It depends on how wide of relief

7    ultimately is granted.   But that does not need to serve as an

8    impediment to class certification, Your Honor.

9         We are entitled to, we believe, injunctive relief

10   that is class wide, attorney's fees.  We also have as a sub

11   class arguments based on wrongful lien.  These -- all of these

12   matters, all of these issues differentiate us enough from the

13   Conway action that we believe that, under the rules set forth

14   in the Allianz and Negrete case as cited in my brief, that we

15   are allowed to proceed, as well.

16        The Ninth Circuit, in considering the issue, said

17   that the district court would have to live with the vicissitudes

18   and consequences of our elegantly messy Federal system.

19   (Shrugs shoulders)  We agree.  We think that the issues

20   decided -- or to be decided in this case are of sufficient

21   importance to the class and to all of the parties, that these

22   Federal law questions are disserving of certification and should

23   be resolved by this Court rather than ignored in the other

24   action.  And there is, of course, still a possibility of -- for an

25   opt-out in the other action depending on how it plays out, that

1       hasn't been fully foreclosed procedurally, as well.  We don't

2       think it's necessary.  We think the issues are sufficiently

3       different that the overlap, such as it is, does not mean that

4       only one of these actions can be pursued.

5                    Having made those specific points, Your Honor, I

6       guess I would now give the podium to Benefis' counsel so that

7       they can address the deficiencies they believe we have.

8                    THE COURT:  All right.  I may have some

9       questions of Counsel, but let's hear from the Defense first.

10                   MR. LANNING:  Okay.

11                   THE COURT:  Counsel, you have the floor.

12                   MR. MCLEAN:  Thank you, Judge.

13                   Your Honor, for the record, David McClean here

14      representing Benefis Health System.  Judge, I, like

15      Mr. Lanning, think that the issue has been fairly well briefed.

16      And I don't want to repeat what's contained in the brief, but I

17      think where I -- I need to start and point out is when Mr.

18      Lanning stood up and commenced his argument, he used the

19      word "appears" many times.  "It appears."  "It appears."  And

20      the facts of the matter is that he had the burden of proof in

21      this case, and "appears" does not equate to the evidence.

22                   And the only -- what they want you to believe is

23      evidence that they presented is they take some data that was

24      comprised in a spreadsheet, and they also argue in their brief

25      that it appears, based on the number of claims, that there

1    may be up to 1,000 -- 1,366, I think was the number, of

2    potential claimants in this particular cause of action, but,

3    again, there hasn't been evidence actually submitted.  And I

4    submit to you it's because it doesn't exist, that this is a

5    systematic-wide practice.

6              Now, you've heard all this discussion about

7    TRICARE and how it is they are billed, but the one thing that

8    the briefs are clear on and the Federal regulations are clear

9    on, and the TRICARE contract is clear on and the TRICARE

10   manual is clear on, is that TRICARE is to be a secondary pay,

11   and that it is true Benefis accepts reduced payments from

12   TRICARE for covered services.  But I would, again, submit that

13   when we are analyzing covered services, the Plaintiff also

14   would carry the burden to prove that what occurred in this

15   case would meet the definition under covered services; and if

16   it doesn't, then there wouldn't be any interplay anyway.

17             But one of the things that the TRICARE contract

18   talks about is not only that you look at the regulations, the

19   rules and the policies, but one of the things that it says that

20   the provider like Benefis should do is confer with the TMA or

21   TRICARE Management Activity, and in this case you have an

22   affidavit in front of you that Benefis was, in fact, conferring

23   with the TMA through its counsel at the JAG.

24             When you look at the TRICARE manual, which we

25   did attach as Exhibit 1, Section 5.5.2, which Plaintiff also cites

1    in Page 3 of their brief, you see that the TRICARE

2    contemplates bills for services against liable third party

3    insurers.  In this particular case where there is a dispute --

4    and, again, I think an affidavit from Sue Atkinson at Benefis

5    that was attached to our brief outlines the interplay and the

6    conversation she had and what she discovered in terms of

7    whether there were misrepresentations or concealment of the

8    potential third-party payer, Unitrin, in this particular case.

9             So I think when you consider that affidavit, it

10    shows that, at least according to TRICARE, they were

11    informing Mr. Van Orden of how this whole system worked.

12    But in essence, Benefis' position is he concealed that

13    third-party payer.  The problem with that is when it's

14    discovered, given the TRICARE regulations that it is the payer

15    of last resort or always to be secondary when there is a

16    third-party carrier, you have to go back and unring that bell.

17    Because you have to file that TRICARE claim within a year.

18    And when they are getting close to that year period, you file

19    the claim only to discover it shouldn't have been filed, or at

20    least when it was filed TRICARE should have been notified of

21    the third-party payer.  The problem is the Plaintiff concealed

22    that, and hence they shouldn't benefit, which is the essence of

23    the unclean hands argument.

24             The TRICARE institution contract that's attached as

25    Exhibit 2 to Benefis' brief in opposition to class certification,

1    under Part 6 there is general provisions, which is on Page 12

2    of 37, and under Paragraph G it includes a provision that not

3    only states that TRICARE coverage is always secondary, but

4    also provides if another entity is providing coverage, Benefis

5    shall bill that entity first and then provide the information to

6    TRICARE regarding -- or regarding that carrier, you provide

7    that information of who actually that third party biller would

8    be to TriWest when submitting the claim.

9         The other issue we raised is that we don't believe

10   that the Plaintiff has standing in essence because they are not

11   an attended third-party beneficiary of this contract and that

12   they are more in line of being an incidental beneficiary to this

13   particular contract between TRICARE and Benefis Health

14   System.

15        Then when you start turning to the factors of class

16   action, and you start looking at a potential definition of the

17   punitive class, we think that the Plaintiff's identifiable class is

18   not susceptible to a precise definition, because it's difficult to

19   ascertain whether they are talking about claims where liens

20   were never filed, because there are certainly going to be

21   TRICARE claims where there is liens that were never filed,

22   there is also going to be a question of when was the lien filed.

23   Was it submitted prior -- a lien filed prior to submission of the

24   claim to TRICARE, or was it submitted after?

25        In addition, there is also a whole made whole

1    component that at some point will come into play.  You know,

2    Plaintiff has asserted, for example, a conversion claim.  And as

3    we all know, conversion would mean taking something that

4    belongs to another and converting it to your own.  But if a

5    Plaintiff in this claim never exhausted policy limits, they would

6    have never recovered anything more anyway.  And so they

7    would not, in and of themselves as individuals, be part of the

8    conversion plan.

9            With regard to Rule 23(a) and the numerosity,

10   again, we think that, although the Plaintiff carries the burden

11   of proof on that, that the class parameters are not definitive.

12   I don't know what question provides the common answer.  The

13   Plaintiff has addressed lien filings by Benefis, and refers to

14   those liens, but, again, based on what I've talked to you about

15   in terms of the requirement to bill third parties first, et cetera,

16   are we talking about when liens were filed before TRICARE

17   was billed, after they were billed, or what about cases where

18   no such liens were ever filed?

19           With regard to commonality, I think the Walmart

20   v. Dukes case at Page 2551 succinctly sets out what we

21   should be talking about, which is did the individuals in the

22   class suffer the same injury.  And, again, I turn to you and say

23   no, because we are still going to engage in an analysis, for

24   example, if a policy was never exhausted a person would have

25   been made whole because they didn't exhaust that policy, and

1  there is no further damages.  If, however, a policy may have

2  been exhausted, there is at least the analysis as to whether or

3  not you then determine is there more to do to make that

4  person whole.

5        Plaintiff was just talking to you a little bit about

6  the Conway case.  And just so the Court is clear, Conway is

7  one of, I believe, eight class action lawsuits against hospitals

8  in this state right now.  And the Conway case is up on appeal.

9  It's not even fully briefed before the Montana Supreme Court

10  as of yet.  We obviously, and I strongly think that there were

11  errors in that particular case, hence the reason it's up on

12  appeal now.

13        There have been two of the class action lawsuits

14  filed by the Blewetts that also have been dismissed by district

15  courts, one by Judge Todd and one by Judge Fagg, both of

16  those are captioned the Harris cases.  One is Harris versus

17  Billings Clinic and one is Harris versus St. Vincent's.  And so

18  there is not this uniform application of class actions in this

19  particular, I guess, array with regard to preferred provider

20  agreements.

21        Now, you asked a question about whether or not

22  resolution of the Conway case may consume Mr. Lanning, and

23  my response to that is I think it's premature.  I do think the

24  Court should know that Mr. Lanning attempted to intervene in

25  the Conway case, and Judge Neill didn't allow that, and

1    recognize that the claims here are also included in that

2    particular class.

3         When we talk about typicality, I think, again, there

4    is this dispute in front of you based on the affidavit from

5    Benefis that I think the Plaintiff's experience in this particular

6    case is unique.  There is a question, at least, and we believe

7    that the evidence actually shows, that the Plaintiff was not as

8    forthright as he should have been about third-party coverage.

9         There is two events where this conduct and

10   credibility was identified, the first was when the Plaintiff was

11   treated in May and he indicated that he did not have coverage

12   for an automobile -- care for the treatment he received, which

13   was later to be discovered untrue, and then again in August of

14   2010 Plaintiff indicated he wanted TRICARE billed as he had

15   not yet filed a claim with Unitrin.  And that was when the JAGs

16   office -- and this is where Sue Atkinson had those

17   communications outlined that there was, in fact, a Unitrin

18   claim.  They gave Benefis the instructions to go after that

19   Unitrin claim, and then TRICARE requested a refund of the

20   monies they had paid based upon the discovery.

21        One of the things that the Plaintiff argues in their

22   brief on Page 12 is they say that, while Benefis pursued the

23   same goal of maximizing payment from a third-party insurer

24   by TRICARE beneficiaries in several ways, not billing TRICARE

25   at all in some cases, billing TRICARE first in other cases, and

1   returning TRICARE's payment if more money was recovered

2   from a third-party insurance source, and filing liens in some

3   cases but not others, now that's their quote, and I think what

4   I use that quote to show is that, in fact, there are unique

5   defenses to the various claims, which, in our opinion, destroys

6   the typicality.

7           Furthermore, given the unique defenses to this

8   particular individual, Mr. Van Orden, and the

9   misrepresentations, you know, we cited the Foxmeyer case,

10  that we believe is on point, that Mr. Van Orden is not -- his

11  claims are not typical because he's subsumed with defending

12  credibly and misrepresentation, which also plays into the

13  adequacy of representation, which is the fourth element.

14          Now, I don't think we've taken exception with Mr.

15  Lanning or his firm, but it's not just about the law firm and

16  their capable representation, it is also about the class

17  representative.  But as I've already alluded to, I think the

18  class representative's attention in this case is going to be

19  diverted.

20          Similarly, the Plaintiff stated on Page 23 of his

21  opening brief that, "The focal question was whether Benefis is

22  entitled to seek and receive payment for its treatment of

23  TRICARE beneficiaries from third-party liability and UM/UIM

24  insurance sources in excess of the established TRICARE

25  reimbursement rate."  What's interesting about that is they

1    are talking about payment being received, Judge, and in this

2    case there has been no payment received.  So I guess Mr. Van

3    Orden doesn't fit within the focal question that Plaintiff in and

4    of themselves has, in fact, presented.

5            When you look at, then, turning to the 23(b)(2)

6    issues, I think what I'd just say with regard to 23(b)(2) is the

7    Walmart decision talked about -- it talked about 23(b)(2) in

8    length, and it stated that the rule does not authorize class

9    certification when each class member would be entitled to an

10   individualized award of money damages, which we believe has

11   occurred or would occur in this particular case.  When you look

12   at the Plaintiff's claims, they say that their dec action is in

13   essence the flagship claim, to quote them, they then have a

14   breach of contract claim, a conversion claim, a wrongful lien

15   claim and a tortious interference claim.  And obviously four of

16   the five claims focus on monetary recovery.

17           But I also think each of those claims presents its

18   own unique set of circumstances.  The dec action, again, they

19   are saying it appears there's been a systematic action, which

20   we, of course, disagree with and submit that they haven't met

21   the burden because there is no evidence of that, but, again,

22   wouldn't it depend on the timing?  If the regulations from

23   TRICARE allow, and, in fact, direct and instruct that TRICARE

24   is to be the secondary payer, wouldn't the dec action only

25   apply if, in fact, there was a violation of that specifically?

1    Which here I think what they are saying is, well, you found

2    out too late.  I don't think you can apply it with a broad brush.

3        Similarly, with the breach of contract, again, it's

4    individualistic, because the regulations manual and contract

5    talk about pursuit of recovery from these third parties.  And so

6    it would depend, I guess, you would have to have a wrongful

7    recovery in order to have a contractual breach, which we

8    submit they are not even a party to.

9        Similarly, you have the same issues with

10   conversion, wrongful lien, tortious interference.  There is cases

11   where even the quote I read to you earlier from their brief

12   where they say where liens were not even filed, again, it's

13   going to hinge on the timing of when the third parties were

14   not billed, what was disclosed by each individual plaintiff,

15   including was there a concealment or lack thereof with regard

16   to a third party, was a Plaintiff made whole or not made whole

17   that would have exhausted?  Because the bottom line is if

18   there is no exhaustion of a policy, then the Plaintiff has

19   suffered no damages anyway.  And so, you know, it's our

20   position that there is not a claim that uniformly applies to all.

21       I think that same quote that I had read from the

22   Plaintiff also destroys the predominance under 23(b)(2).

23   There's going to be multiple mini trials regarding what would

24   the damages be for each particularly -- each individual.  And I

25   think that, again, you get into analyzing when payment was

1    sought for each claim, whether a lien was or was not filed,

2    whether a party was or was not made whole, what

3    representative each potential class member did or did not

4    make when the information was provided to Benefis upon

5    seeking treatment.

6              Judge, I guess, you know, I'm willing to answer

7    any questions, but I think here the Plaintiff's failed to carry

8    the burden of proof.  I think that they talk in their brief about

9    speculation and supposition and conclusory allegations that

10   shouldn't be made by Benefis, but I think that's what their

11   brief actually contains, and, as such, I think that Plaintiff's

12   failed to meet the Rule 23 requirements and class certification

13   should be denied.

14             THE COURT:  Mr. Lanning, you want to respond?

15             MR. LANNING:  Briefly, Your Honor.

16             Addressing some of Mr. McClean's introductory

17   remarks I would simply point out, Your Honor, that the

18   question is not whether the hospital was acting in good faith

19   or bad faith, but whether its compliance -- whether its policy

20   complied with Federal law.  I mean, that is the question,

21   regardless of whether what their contract said or what they

22   were told by the regional administrator.  The question is were

23   they acting in compliance with Federal law in pursuing this

24   policy or were they not?  I'm certainly sympathetic to the fact

25   that they believed they were relying on a contract, but to the

1  extent that contract violates Federal law, it provides them no

2  defense.

3            Mr. McClean made the point or the argument that

4  we have failed to provide sufficient evidence of a systematic

5  policy.  Your Honor, like I said earlier, the evidence is in the

6  affidavit and brief of Benefis.  The affidavit of Sue Atkinson

7  and their very brief admit that this is how they did it.  Not in

8  this case, but in every case.  And with respect to the issue of

9  the circumstance where they find out later that there is a

10  third-party source, that happened, that's not unique to this

11  case.

12            In fact, what they said in their brief was, "Patients

13  treated at Benefis are asked to identify the appropriate payer

14  for their medical care to ensure that the appropriate entity is

15  billed."  That's on Page 10.  They will bill who they think is

16  appropriate.  And when there is third-party insurance, they

17  have indicated that's who they think is appropriate regardless

18  of whether or not TRICARE applies.

19            Then further on down that second paragraph, they

20  say, "Benefis frequently learned of third-party payers after

21  billing TRICARE.  Benefis then usually bills the third-party

22  payer and reimburses TRICARE any amount TRICARE has

23  paid."  What happened to my client was not unique, it was

24  systematic.  "Frequently" and "usually" are their own words to

25  describe how often the circumstance comes up.

1    What is unique about my client, Your Honor, is

2    that because he had two different claims, and they were

3    handled in two different ways, he actually straddles the

4    practical or factual divide in terms of potential subclasses,

5    those who never had a chance to have TRICARE billed because

6    Benefis moved straight to the insurer -- third-party insurer,

7    and those who TRICARE billed, paid, and then they had to give

8    it back.

9    They briefly addressed numerosity.  In response to

10   discovery, they provided a disk with 62,245 TRICARE patient

11   account payment records.  And they also indicated in

12   discovery that that was not complete, that they could not

13   identify, as TRICARE patients those where TRICARE was never

14   billed.  We also know it's incomplete for another reason, that's

15   my client is not included in it for some reason.  Don't know

16   why.

17   So, yeah, we analyzed all 62,245 patients, we

18   came up with 39 claims that appear to be certain, another

19   1,366 which are probable.  Those reflect only those

20   circumstances where TRICARE was billed and then later

21   money was paid back to TRICARE.  And, again, that's not

22   complete.  As the case law makes clear, Your Honor, an exact

23   number is not necessary to satisfy numerosity.  It just has to

24   be sufficient to show that it's impractical.  Doesn't -- it can be

25   estimated.

1   Based upon the information that we were

2   provided, our estimate is sufficient to show that these -- it is

3   not appropriate for these cases to be handled one-on-one, that

4   there are sufficient numbers of them regardless of Benefis'

5   own inadequate -- or record keeping to identify some of them

6   to proceed as a class.  And as far as I know, Benefis doesn't

7   contest -- isn't saying that they provided us with incorrect

8   information.

9   Benefis takes issue at the fact that we have

10  identified different ways in which individual class members

11  might be hurt by their application of the policy.  The fact that

12  people may be hurt, deprived of money or deprived of

13  insurance proceeds for a period of time while wrongful lien is

14  in effect, in different ways should not and does not serve as

15  an impediment to class certification, Your Honor.  The simple

16  overriding legal question as to whether or not this policy,

17  whether executed at the outset or belatedly, violates Federal

18  law is sufficient for commonality, is sufficient for typicality.

19  The injunctive relief that we have sought clearly

20  falls under Rule 23(b)(2), and, as stated in the brief, we also

21  meet the 23(b)(3) requirements.  There aren't a lot of cases

22  close enough to this one to provide overreaching Federal

23  authority on the scope of the injunctive relief.  That, Your

24  Honor, is why we've cited to the Safeco versus Ferguson case,

25  to the Montana Supreme Court cases where they fully reject

1    the argument that is being made by Benefis in this case.

2         Injunctive relief that may require Benefis to go

3    back and act appropriately under the law, just like Safeco was

4    required to go back and act appropriately under the law in

5    terms of the made whole doctrine, does not require this Court

6    to have any a number of many trials.  It may require Benefis

7    to resolve the matter internally, but that does not mean that

8    the injunctive relief somehow becomes something other than

9    injunctive relief or requires this Court to have hundreds of

10   separate legal proceedings.  It can be up to Benefis to fix its

11   improprieties injunctively without requiring this Court to make

12   specific factual findings.

13        Unless the Court has any specific questions.

14        THE COURT:  Well, I'll start with the question,

15   do -- does the Plaintiff take issue with the proposition as

16   advanced by Benefis that TRICARE is a secondary payer?  That

17   is, that it doesn't pay until other sources of payment either

18   can't or won't pay?

19        MR. LANNING:  Your Honor, we do not take issue

20   with that in that that is a correct statement of Federal

21   statutory and regulatory law.  We do take issue, however, with

22   how Benefis would apply it in this case.

23        THE COURT:  I understand that part of it.  But --

24   well, let's assume that whether Benefis does or does not

25   comply, if your client's bill gets paid -- now, I'm talking about

1    Van Orden, I'm not talking about class members.

2              MR. LANNING:  Yes.

3              THE COURT:  If Van Orden's bill gets paid,

4    satisfied, what's it damage?  If he doesn't have to come up

5    with money out of his pocket to pay the Benefis bill, what's his

6    damage?  What's his standing to contest the --

7              MR. LANNING:  Well, his specific --

8              THE COURT:  -- event?

9              MR. LANNING:  His specific damages now are

10   primarily interest damages in that there were delays in him

11   receiving policy benefits that he would otherwise have

12   received but for the actions of Benefis in seeking to --

13             THE COURT:  Now, what do you mean by that,

14   Counsel?  Help me there, please.

15             MR. LANNING:  Okay.  There were insufficient --

16   well, let me back up and give you a little more facts, Your

17   Honor.  The tortfeasor had a minimum limits policy of which

18   25,000 was available for my client.  He had, under his own

19   policy, 50,000 in uninsured and under insured benefits.

20             THE COURT:  Okay.

21             MR. LANNING:  Which covered here --

22             THE COURT:  Now we are implicating other

23   characters.  All right.

24             MR. LANNING:  Right.

25             THE COURT:  Now that you mentioned that in

1    some instances the people who you assert to be involved in

2    this class might have Med Pay coverages that could be

3    implicated, as well.

4               MR. LANNING:  Actually, no, we have kept Med  --

5    we've cut Med Pay out.

6               THE COURT:  Well, I heard you mention that in

7    argument, that Med Pay was a potential third source from

8    which money might come.

9               MR. LANNING:  Yes.  But it's not a source that is

10   included in our class, because our class is concerned with the

11   made whole doctrine of both --

12              THE COURT:  All right.  Okay.

13              MR. LANNING:  -- State and Federal law.

14              THE COURT:  At bottom you're looking at the

15   made whole doctrine as a component of the process.

16              MR. LANNING:  That is correct, Your Honor.

17              THE COURT:  All right.

18              MR. LANNING:  And in this case --

19              THE COURT:  I don't know that you said that, but I

20   certainly drew that conclusion.

21              MR. LANNING:  Right.  And that's why we are not

22   seeking to include those benefits in.

23              THE COURT:  Well, is your case, then -- your case,

24   Van Orden's case, dependant upon the fact that he was not

25   made whole as that doctrine would be interpreted without

1  resorting to these other funds, or indeed without resorting to

2  the money that went to Benefis?

3        MR. LANNING:  Uhm, mostly.  With respect to the

4  wrongful lien, uhm, no, there are additional remedies there.

5  But, yes.  In large part, Your Honor, yes.

6        THE COURT:  Okay.  All right.  Well, what do we

7  know, if anything, about whether these other people who are

8  out there that you seek to involve as members of the class

9  have such made whole doctrine claims?

10        MR. LANNING:  We have no specific knowledge on

11  the extent of their potential insurance recovery at this time.

12        THE COURT:  All right.  Okay.  All right.

13        MR. LANNING:  That would be part of our class

14  process in identifying and communicating with them.

15        THE COURT:  Okay.  All right.  I understand.

16        MR. LANNING:  Okay.

17        THE COURT:  Well, I think that's the questions

18  that I had at this point.  All right.  Go ahead, Counsel, do you

19  have anything else you want to present?

20        MR. LANNING:  No, Your Honor.

21        THE COURT:  Or either side does?

22        MR. LANNING:  Nope.  I think that's all.

23        THE COURT:  Well, then, let's see if we can

24  address these matters.  I'll start in making the observation

25  that what this Court will do, or indeed what it can do under

1   the limited jurisdiction that it has, is limit itself to this case.  I

2   do not intend to make any ruling, consider myself not to have

3   the capacity at this point to make any rulings, that would be

4   implicated by as yet unresolved other cases pending either in

5   State District Court or in the Montana Supreme Court.  The

6   Conway case, was that the name of the case?

7           MR. MCLEAN:  Yes, Your Honor.

8           THE COURT:  Counsel can be assured that nothing

9   has happened or that is happening or ongoing or unresolved in

10  the Conway case will get any weight in this court because I

11  don't think its appropriate to engage in that sort of

12  speculation.  And I certainly don't think it appropriate that we,

13  in effect, defer rulings here to the weight action in some other

14  court in the Conway case.

15          Counsel had referenced on both sides the Walmart

16  decision from the United States Supreme Court, 2011, as a

17  significant guideline provider for purposes of class action

18  litigation, and we will certainly be guided by the principles set

19  forth in that case as they may apply here.  As an observation,

20  Counsel, it appears to this Court that the Walmart decision is

21  in the same vein, although not factually the same, as the

22  cases that are commonly referred to as Iqbal and Twombly,

23  which are two decisions from the United States Supreme Court

24  in 2007 and 2008, as I recall, which I think are now well

25  accepted as having in effect created a new set of criteria by

1    which pleadings in Federal Court are to be evaluated.

2              Where is the commonality between the two, just

3    as a short observation before we get into the particulars of the

4    Walmart case?  Iqbal and Twombly both made clear, at least

5    read together, that simple notice of pleading, some sort of

6    assertion of a factual basis for, or a factual end conclusional

7    basis for a claim is not enough, that the pleader, under an

8    appropriate interpretation of Rule 8, is obliged to be specific in

9    pleadings in certain areas to the point that the court can make

10   a reasoned determination as to whether there is a claim

11   presented.  And a part of the analysis that is set out in those

12   cases is that it is the obligation of the court to apply what is I

13   think referred to as its judicial experience in making that

14   analysis.

15             We find, in the view of this Court, a sort of

16   parallel, in fact, a very real parallel, in the way that the

17   Supreme Court addresses the compliance with -- necessary to

18   meet the obligations of Rule 23.  So let's start with Rule 23,

19   and I'll touch upon that comparison more specifically.  Rule

20   23, of course, requires that there been a compliance with both

21   Rules 23(a) and (b).  Now, they are stated in different

22   fashions.  All of the provisions of Rule 23(a) must be met,

23   those are to be met conjunctively, and at least one of the

24   requirements of Rule 23(b) is to be met.  That analysis and

25   conclusion from the analysis is clear, not only from the plain

1    language of the rule itself, but is similarly stated in the

2    Walmart decision.

3            Now, what did Rule 23(a) require?  We'll start

4    there.  Well, it requires four criteria to be met.  One, that the

5    class is so numerous that joinder of all members is

6    impractical.  Second, that there are questions of law or fact

7    common to the class.  Third, that the claims -- or defenses of

8    the representative parties are typical of the claims or defenses

9    of the class.  And, four, that the representative parties will

10   fairly and adequately protect the interests of the class.  No

11   dispute that all of those are to be met, and there is no dispute

12   at this point but that the burden is on the party that is

13   proposing the class to establish that those criteria are met.

14           The WalMart case, however, gives us some

15   additional insight into what is required to meet those

16   conditions, one of those is that the Supreme Court has now

17   set forth clearly that the trial court has an obligation to

18   engage in what is characterized as a rigorous analysis to

19   ensure that compliance with the requirements of the rule are

20   met.  That, in the view of this Court, is a parallel to the

21   increased pleading standard requirements that were first

22   annunciated in Iqbal and  Twombly.  To state it a bit

23   differently, it appears to this Court that the rigorous analysis

24   choice of words in the Walmart case is a difference in

25   language, but not a difference in content from the obligations

1       imposed upon the district court in Iqbal and Twombly in

2       reviewing the sufficiency of a claim under Rule 12(b)(6).

3                    Another component of what Walmart tells us is

4       that the Plaintiff must, to use the language of the opinion,

5       affirmatively just demonstrate compliance with the

6       requirements of Rule 23(a).  And the final observation that the

7       Court makes is that actual conformance with the rule is, and I

8       quote, "indispensable."  That is indeed, by any dispassionate

9       analysis, quite different from picking up a pleading and

10      casually looking at it and determining that, well, there appears

11      to be something in the nature of facial compliance with the

12      requirements of the rule as set forth, and that's good enough.

13      Those days, it appears to this Court, are gone, at least in this

14      type of litigation involving class actions.

15                   So, that leads us, then, to an analysis of whether

16      those standards are met by what is now before the Court.

17      Another component of Iqbal and Twombly that I think has

18      application here is that discovery is not the tool to be resorted

19      to to determine whether or not the requirements of setting

20      forth an appropriate claim under the rules have been met.

21      Now, specifically the provision that was under consideration in

22      Iqbal and Twombly was the Rule 12 motion.  Here we are

23      looking at a Rule 23 issue, but the parallels are striking.  This

24      Walmart -- in the Walmart case, the conformance with the

25      rule being characterized as indispensable is a clear signal in

1    itself.

2            So, let's look first at taking these up in the order

3    in which they appear.  Whether the class is so numerous that

4    joinder of all members is impractical.  Well, the case law tells

5    us otherwise, that this is not a hard and fast rule to be

6    determined by some specific number.  It is, in any instance, a

7    case-by-case analysis process, there is not any hard and fast

8    rule to be applied.  Some examples that we have determined

9    in our research have led us to conclude that a range of the

10   sort that is talked about here, in 30-some-odd that the

11   Plaintiff believes are specific, that a range of that might be

12   appropriate or might not be.  Some cases, 15 to 40 class

13   member range say, yes, the number set forth is enough,

14   others say no, but the bottom line is that it's an individual

15   case-by-case analysis.  And it is a burden to be carried by the

16   plaintiff.

17           Now, what do we have here?  Well, what we have,

18   in the view of the Court, is that we have a substantial number

19   of assertions that appear in the briefs, and to some extent

20   repeated here in argument, of all -- what the potential number

21   of persons who with claims that might fit into this class are,

22   but we don't have any actual numbers.  You know, we have

23   some reference made to what I think Plaintiffs have

24   characterized as "our estimate," but we do not have in the

25   form of proof, through affidavit or otherwise, of any specific

1    number.  So we have that much, and we don't have more.

2    Turning to the separate and second component,

3    which is called -- in shorthand is the commonality component,

4    that has found more specificity in case law, particularly in the

5    Walmart decision, which requires that there be, as have been

6    some reference here today, a showing that the class members

7    suffered the same injury.  And we have other language from

8    the Walmart case that the common contentions must be of

9    such a nature that it is capable of class-wide resolution, which

10    means that the determination of the -- what amounts to a

11    single issue, truth or falsity will resolve an issue that is central

12    to the validity of each one of the claims in one stroke.

13    Now, one can read that to have some amount of

14    weight, but I read it to say what the language on the page

15    says, which is that there must be specificity.  Now, here the

16    Plaintiff asserts that the question is whether Benefis is entitled

17    to receive and received payments from its treatment of

18    TRICARE beneficiaries from third-party liability and UM/UIM

19    insurance sources in excess of the established TRICARE

20    reimbursement rate.

21    Now, that issue, as it's framed, and as the colloquy

22    with Counsel certainly confirmed, includes at least two classes

23    of other insurance beyond the TRICARE insurance, if what

24    TRICARE provides is generically classified as insurance, that

25    particularly other insurance that may have been provided by a

1    third party, that is a third party liability carrier, or by a carrier

2    who provided coverage to the Plaintiff insured under

3    under-insured or uninsured coverages.  And as Counsel has

4    acknowledged, Med Pay may also be involved, although

5    Counsel is clear in making his position that, no, that they are

6    not -- they, the Plaintiffs in this class group, are not including

7    Med Pay coverages.

8              But as the argument has progressed, and as the

9    questions now I think confirm, what we are really talking

10   about here in many components -- many of its components is

11   whether the Plaintiff here has a claim in the first instance

12   under the made whole doctrine.  And I take it to be the

13   Plaintiff's position that, well, maybe he does, but, in any

14   event, he's not able to say, and I think it is appropriate, the

15   candor having been expressed, that where there was other

16   people who are sought to be within the class have this made

17   whole concept applicable to them or whether they do not.  So

18   we have that sort of left hand.

19             When we turn to the typicality component, the

20   third component of this quartet requirement, the claims of the

21   Plaintiff have to be typical of all the class members.  And the

22   court has -- at least the Supreme Court in the Walmart case

23   has made it clear that this particular requirement may, in fact,

24   overlap with the adequacy of representation component, and

25   that's, I think, reality as to perhaps more than just the latter

1    two of these four requirements, that there may be some

2    overlap of satisfaction or lack of satisfaction of the core

3    requirements throughout the analysis process and there may

4    be overlap.

5            But the Plaintiff in here asserts that all of the

6    potential class member Plaintiffs have claims that arise from

7    the same practice or course of conduct as that was -- as that

8    engaged in with this Plaintiff.  And Mr. Lanning, of course,

9    points out that he sees his named plaintiff as in such

10   straddling a -- at least a part of these processes that are said

11   to have been engaged in by Benefis.  Which are characterized

12   in the papers, and I think here in argument, as one of those

13   processes that is complained about, is that TRICARE wasn't

14   billed at all, and that's thought to be inappropriate.

15           Another is that TRICARE was billed first, and then

16   if TRICARE paid, billed first and paid first, then the practice of

17   Benefis is to return money received from some other source,

18   some third party source, if such a third party source payment

19   was received at a later time.  That is whatever TRICARE had

20   paid would be reimbursed to TRICARE.

21           And then the third practice that is said to have

22   been inappropriate was the filing of liens in some cases but

23   not others, with some result apparently coming from both lien

24   filings, whether they were ultimately paid or dropped or what.

25   But I conclude from this record that what we have is not a

1   practice that is being focused upon in particular, but a

2   combination of practices, some of which, as the named

3   Plaintiff may say applies to him, others may not, and there are

4   other potential class members who may have one or more of

5   these practices which are said to be inappropriate applicable

6   to them, either individually or perhaps in some other

7   combination.

8           Interwoven throughout this is the assertion made

9   by the Defendant, as it relates to Van Orden, is that there are

10   un -- or said to be unresolved factual disputes, and resolution

11   of those factual disputes is literally at the heart and soul of

12   whether the Plaintiff in the first instance has individually a

13   viable claim, that is the assertion is what really happened and

14   who is to be believed in this process, who in large aren't

15   resolved, can't be resolved at this juncture in this case, and

16   that frankly and directly leads us, in view of the Court, right

17   into the fourth component of this analysis process, which is

18   adequacy of representation.

19           And if I get any message at all, Counsel, from the

20   Walmart case, it is to this Court clear that if the Court is to put

21   its stamp of endorsement on selection of a class

22   representative, that that class representative must be capable

23   of fairly and adequately representing the interests of the class,

24   and that this component is subject to the same rigorous

25   analysis requirement, and that compliance with this particular

1    component is indispensable to a determination that the class

2    should be certified as requested.

3           And my assessment of this one is that the Plaintiff

4    simply has too many unique issues which are not shown by

5    anything before this Court as relating to any other potential

6    class member that preclude this Plaintiff from being freed up

7    from a preoccupation, or even a dominance in this set of

8    circumstances, with his particular role in proving his own

9    claim, and I find that that mitigates against this Court finding,

10   under the rigorous analysis standard that I deem myself

11   obliged to apply, that the typicality of his claims and the

12   adequacy of representation requirements for certification

13   under Rule 23(a) have been met.  I find they have not been

14   met.  If we were looking solely at what is asserted on the face

15   of the pleading, and at an earlier time pre-Walmart this

16   pleading might have passed mustard, but I don't think it does

17   so under the requirements of the Walmart case.

18          Now, we have in addition here the question of

19   whether we -- in my earlier comments what I left unresolved

20   as to whether a joinder of all these people is impractical.

21   While I don't think it's determinative of the issue before the

22   Court, if we were looking solely at this issue, while we have

23   assertions and briefs and arguments made, I don't find that

24   the rigorous analysis test component has been passed with

25   regard to the number of persons being so large that their

1   joinder would be impractical.  And certainly with regard to

2   these questions of coverages that might be implicated and the

3   whole of the made whole concept, it seems to me what we are

4   being asked to do is approve a class that would simply dump

5   all of those types of claims into a common resolution format,

6   and that's not, in view of this Court, what a class action is

7   supposed to do.

8          We can't find and search out a particular question,

9   say, well, resolve that question and then we'll leave all the

10  rest of these questions to be resolved individually.  That's not

11  what a class action is intended to do in view of this Court, and

12  I think that is exactly what we would be walking into were we

13  to undertake that task here.  And, therefore, my conclusion is

14  that the motion for certification of class must be, as framed,

15  denied.

16         That's the ruling of the Court.  There will be a

17  short summary ruling, Counsel, that will place upon the record

18  the substance of the ruling.  If you want the detail of the why,

19  you need to go to the transcript.  I emphasize, Counsel, that if

20  this matter were presented pre Walmart we might be looking

21  at a totally different standard, but I think where we are today

22  is where we are.  And this Court, like other Federal District

23  Courts across this country, are obliged in all candor to rethink

24  long-honored practices of pleading and to recognize that the

25  Supreme Court has given us what amounts to new marching

1    orders for how we are to approach many pleading issues that

2    come before us.

3            I appreciate the good work on all sides by Counsel,

4    and we will look forward to continuing with the case in the

5    individual plaintiff component.  We are in recess.

6

7            **(Proceedings concluded at 11:26 a.m.)**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE

| | |
|---|---|
| 1 | |
| 2 | STATE OF MONTANA                    } |
| | } ss: |
| 3 | COUNTY OF  BUTTE-SILVER BOW          } |
| 4 | |
| 5 | I, Julie L. Sampson, Official Court Reporter for |
| 6 | the U.S. District Court, and notary public in and for the |
| 7 | aforesaid county and state, do hereby certify that: |
| 8 | I am a duly-appointed, qualified Court Reporter; |
| 9 | that all of the proceedings had in the above-entitled action |
| 10 | were taken down by me in shorthand and thereafter reduced |
| 11 | to computerized transcription, and the foregoing transcript |
| 12 | contains a full, true, and correct transcript of the said |
| 13 | proceedings to the best of my ability. |
| 14 | IN WITNESS WHEREOF, I have hereunto set my |
| 15 | hand this 20th day of November, 2012. |

                              /s/ Julie Sampson
                              Julie L. Sampson
                              Court Reporter


                              /s/ Julie Sampson
(SEAL)                        Julie L. Sampson
                              Notary Public for the State of Montana
                              Residing at Butte, Montana
                              My Commission Expires January 20, 2015

**\* \* \* \* \* \***

***For The Record Reporting Services***
***Julie Sampson – (406) 498-3941***